## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARQUES ANDRE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - against - | ) | Civil Action No. 1:16-cv-00185-LPS |
| | ) | |
| WARNER BROS. ENTERTAINMENT, INC., | ) | |
| TMZ PRODUCTIONS, INC., TTT WEST | ) | |
| COAST, INC., BARSTOOL SPORTS, INC., | ) | |
| BET INTERACTIVE, LLC, REAL TIMES | ) | |
| MEDIA, LLC, DAILY NEWS, L.P., CHERI | ) | |
| MEDIA LLC, INTERACTIVE ONE, LLC, | ) | |
| GANNETT COMPANY, INC., CBS | ) | |
| INTERACTIVE, INC., VIACOM | ) | |
| INTERNATIONAL, INC., TOWNSQUARE | ) | |
| MEDIA, INC., and IHEARTMEDIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPENING MEMORANDUM OF BET INTERACTIVE, LLC, CBS INTERACTIVE, INC., DAILY NEWS, L.P., GANNETT COMPANY, INC., IHEARTMEDIA, INC., INTERACTIVE ONE, LLC, REAL TIMES MEDIA, LLC, AND VIACOM INTERNATIONAL INC., IN SUPPORT OF MOTION TO DISMISS**

OF COUNSEL:

James Rosenfeld
Jaya Kasibhatla
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230

MORRIS JAMES LLP
Thomas E. Hanson, Jr. (#4102)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
thanson@morrisjames.com

*Attorneys for Defendants*
*BET Interactive, LLC, CBS Interactive, Inc.,*
*Daily News, L.P., Gannett Company, Inc.,*
*iHeartMedia, Inc., Interactive One, LLC,*
*Real Times Media, LLC and Viacom*
*International Inc.*

Dated:  July 11, 2016

# TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II. SUMMARY OF ARGUMENT ........................................................................................ 2

III. STATEMENT OF FACTS .............................................................................................. 3

IV. ARGUMENT ................................................................................................................... 5

A. Plaintiff's Claims are Untimely ........................................................................... 5

1. Under the Delaware Borrowing Statute, this Action "Arose" in the State of Plaintiff's Residence – Pennsylvania – and Pennsylvania Law Therefore Applies ........................................................................... 5

2. Plaintiff's Claims Are Barred Under Pennsylvania Law ........................... 7

B. Plaintiff has Failed to Establish that Venue is Proper in Delaware ....................... 8

C. Plaintiff has Not Sufficiently Pled Fault ............................................................. 10

1. Plaintiff is a Public Figure ..................................................................... 10

2. Plaintiff Has Failed to Plead Actual Malice .......................................... 12

D. Plaintiff has Failed to Allege Any Actionable Statement by Viacom or CBS Interactive ........................................................................................................ 17

E. Delaware Lacks Personal Jurisdiction Over Defendant Real Times Media ......... 18

V. CONCLUSION .............................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advocat v. Nexus Industries, Inc.*,
    497 F. Supp. 328 (D. Del. 1980).................................................................17

*Am. Future Sys., Inc. v. Better Bus. Bureau*,
    592 Pa. 66, 923 A.2d 389 (Pa. 2007) .......................................................11

*Aoki v. Benihana*,
    839 F. Supp. 2d 759, 763 (D. Del. 2012) .........................................1, 3, 5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................3, 13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................13, 14

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)...........................................................14, 15, 16

*Bockman v. First American Marketing Corp.*,
    459 Fed. Appx. 157 (3d Cir. 2012).............................................................10

*Bose Corp. v. Consumers Union*,
    466 U.S. 485 (1984)..........................................................................12, 13

*Brennerman v. Guardian News & Media Ltd.*,
    No 1:14-cv-00188-SLR-SRF, 2015 U.S. Dist. LEXIS 172429 (D. Del. Dec.
    29, 2015) ...........................................................................................18

*Del. Prof'l Ins. Co. v. Hajjar*,
    55 F. Supp. 3d 537, 543 (D. Del. 2014)....................................................9

*Dymond v. National Broadcasting Co.*,
    559 F. Supp. 734 (D. Del. 1983)..........................................................5, 6, 7

*In re First Solar, Inc. Derivative Litig.*,
    No. Civ. 12–417, 2013 WL 817132 (D. Del. Mar. 4, 2013)..........................8, 9

*Gertz v. Robert Welch*,
    418 U.S. 323 (U.S. 1974)......................................................................10

*Grier v. Johnson*,
   232 A.D.2d 846, 648 N.Y.S.2d 764 (N.Y. App. Div. 1996) ...................................................13

*Grubbs v. Univ. of Del. Police Dept.*,
   No. 1:15-cv-00195-GMS, Dkt. 177 (D. Del. Nov. 30, 2015)....................................................7

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)..................................................................................................................13

*Kabbaj v. Simpson*,
   547 F. App'x 84 (3d Cir. 2013) ................................................................................................18

*Liberty Lobby, Inc. v. Dow Jones*,
   838 F.2d 1287 (D.C. Cir. 1988) ...............................................................................................16

*Marcone v. Penthouse Int'l Magazine For Men*,
   754 F.2d 1072 (3d Cir. 1985)...................................................................................11, 12, 13

*Martin v. Widener Univ. Sch. of Law*,
   No. CIV. A. 91C-03-255, 1992 WL 153540 (Del. Super. June 4, 1992) ..........................10, 12

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012) ...................................................................................................14

*McFarlane v. Esquire Magazine*,
   74 F.3d 1296 (D.C. Cir. 1996)..................................................................................................13

*McTyre v. Broward Gen. Med. Ctr.*,
   749 F. Supp. 102 (D.N.J. 1990) ...............................................................................................10

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,
   960 F.2d 1217 (3d Cir. 1992) .....................................................................................................9

*Mendelson v. Morning Call, Inc.*,
   2007 Pa. Dist. & Cnty. Dec. LEXIS 256 (Pa. C.P. 2007).........................................................11

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. Fla. 2016) ...........................................................................................14

*New York Times v. Sullivan*,
   376 U.S. 254 (1964)............................................................................................................13, 16

*Pack v. Beech Aircraft Corp.*,
   132 A.2d 54 (Del. 1957) .............................................................................................................5

*Perlman v. Vox Media, Inc.*,
   No. 10046-VCP, 2015 WL 5724838 (Del. Ch. Sept. 30, 2015) .........................................5, 6, 7

*Pippen v. NBCUniversal Media, LLC,*
   734 F.3d 610 (7th Cir. 2013) ............................................................................14, 16

*Q-Tone Broad. Co. v. v. MusicRadio of Maryland Inc.,*
   No. CIV.A.93C-09-021-WTQ, 1995 WL 875438 (Del. Super. Dec. 22, 1995).....................11

*Quinto v. A&P/New Dominion Stores,*
   No. 90-6490, 1991 U.S. Dist. LEXIS 14736 (E.D. Pa. Oct. 11, 1991) ..................................17

*Ripps v. Gannett Co.,*
   1993 U.S. Dist. LEXIS 8552, 21 Media L. Rep. 1200 (N.D. Ala. Mar. 3,
   1993) ........................................................................................................................16

*Schatz v. Republican State Leadership Comm.,*
   669 F.3d 50 (1st Cir. 2012).............................................................................14, 15

*Simmons Ford, Inc. v. Consumers Union of the United States, Inc.,*
   516 F. Supp. 742 (S.D.N.Y. 1981) ............................................................................16

*Smiley v. Daimler Chrysler,*
   538 F. Supp. 2d 711 (D. Del. 2008)..........................................................................17

*Smith v. Del. State Univ.,*
   47 A.3d 472, 480 (Del. 2012) ..................................................................................5, 7

*St. Amant v. Thompson,*
   390 U.S. 727 (1968).................................................................................................13

*Stinson v. GAF Corp.,*
   757 F. Supp. 644 (W.D. Pa. 1990)............................................................................17

*Sweeney v. Prisoners' Legal Servs. of New York, Inc.,*
   647 N.E.2d 101, 84 N.Y.2d 786 (N.Y. 1995) ........................................................13

*Taha v. Bucks Cty.,*
   No. CV 12-6867, 2015 WL 9489586 (E.D. Pa. Dec. 30, 2015) ..............................11

*Time, Inc. v. Pape,*
   401 U.S. 279 (1971).................................................................................................12

*Tucker v. Fischbein,*
   No. 97-6150, 1999 U.S. Dist. LEXIS 1781 (E.D. Pa. Feb. 9, 1999) *aff'd,*
   *Tucker v. Fischbein,* 237 F.3d 275 (3d Cir. Pa. 2001) ............................................16

*Turk v. Salisbury Behavioral Health, Inc.,*
   No. 09-CV-6181, 2010 WL 1718268 (E.D. Pa. Apr. 27, 2010) ..............................17

*Re v. Gannett Co.,*
    480 A.2d 662 (Del. Super. 1984), *aff'd*, 496 A.2d 553 (Del. 1985) .......................................11

*Vector Sec., Inc. v. Corum,*
    No. Civ. A. 03-741, 2003 WL 21293767 (E.D. Pa. Mar. 21, 2003) .........................................9

**Statutes and Rules**

10 Del. C. § 3104 ..............................................................................................................18

10 Del. C. § 8119 ..............................................................................................................7

10 Del. C. § 8121 ............................................................................................................5, 7

28 U.S.C. § 1391(a) ..........................................................................................................8

28 U.S.C. § 1391(b) *et seq.* ...........................................................................................8, 9

28 U.S.C. § 1406 ..............................................................................................................9

42 Pa. Consol. Stat. § 5322(a)(4); ..................................................................................9

42 Pa. Consol. Stat. § 5523(1) .........................................................................................7

Fed. R. Civ. P.  12(b)(2), (3) and (6) ..........................................................................1, 13

Defendants BET Interactive, LLC ("BET Interactive"), CBS Interactive, Inc. ("CBS Interactive"), Daily News, L.P. ("Daily News"), Gannett Company, Inc. ("Gannett"), iHeartMedia, Inc. ("iHeartMedia"), Interactive One, LLC ("Interactive One"), Real Times Media, LLC ("Real Times Media"), and Viacom International Inc. ("Viacom") (collectively, "Group Defendants") respectfully move to dismiss the complaint brought by plaintiff Marques Andre Johnson ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(2), (3) and (6), on the following grounds: (1) all of the claims against the Group Defendants are time-barred under applicable (Pennsylvania) law; (2) Plaintiff fails to allege any basis for venue in this district; (3) Plaintiff fails to make sufficient allegations of fault to establish actual malice, which is the applicable fault standard, against any of the Group Defendants; (4) Plaintiff fails to allege that either Viacom or CBS Interactive made any utterance of and concerning Plaintiff; and (5) Plaintiff fails to make any allegations supporting the exercise of personal jurisdiction over Real Times Media.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this action, asserting claims of libel and false light invasion of privacy against all defendants, on March 23, 2016 based on news stories published on the internet in April and May of 2014.[1]  Discovery has not begun.

---

[1] For the Court's reference, Group Defendants submit the Verified Complaint ("Complaint") as Exhibit A and the Group Defendants' challenged articles (the "Articles") as Exhibit B to the accompanying Affirmation of James Rosenfeld, dated July 11, 2016.  The Articles are expressly referenced at Paragraphs 47-48, 50-53, 56-58, 62-65 of the Complaint and therefore may be deemed incorporated therein and considered on this motion. *See Aoki v. Benihana Inc.*, 839 F. Supp. 2d 759, 763 (D. Del. 2012) ("A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference.").

1

## II.    SUMMARY OF ARGUMENT

1.      The Delaware borrowing statute and Delaware choice of law rules require application of Pennsylvania's one-year statute of limitations to Plaintiff's claims.  The claims were filed more than one year after they accrued, and are therefore barred.

2.      Plaintiff has failed to make allegations supporting any proper basis for venue in Delaware.  He has not pled, and could not plead, that all of the defendants are residents of Delaware, that a substantial part of the events or omissions giving rise to the claim occurred in Delaware, or that the action could not be brought in any other district.  The action could be brought in Pennsylvania, but transfer would be futile given the other deficiencies set forth here, so the lack of venue in this district warrants dismissal.

3.      Plaintiff's own allegations establish that he is a public figure, requiring him to show by clear and convincing evidence that the statements he challenges were published with actual malice.  However, he has failed to make plausible allegations that any of the Group Defendants made any defamatory statement about him with knowledge of its falsity or with reckless disregard for its truth, and indeed his allegation that TMZ first reported the story at issue and Group Defendants repeated a mistake in that initial report belie Plaintiff's conclusory assertion of actual malice.  He therefore fails to meet this standard of fault as a matter of law.

4.      Plaintiff has not alleged that Viacom or CBS Interactive made a specific defamatory utterance, and therefore fails to state a claim against either party.

5.      Plaintiff has failed to allege any basis for this Court to exercise personal jurisdiction over defendant Real Times Media.

### III.    STATEMENT OF FACTS

Plaintiff Marques Andre Johnson alleges in the Complaint[2] that he began performing as a hip hop artist when he was seven years old, often under other names.  Compl. ¶¶ 19, 20, 73. Beginning in 2002, he performed under the name "Andre Roxx."  Compl. ¶ 20.  In 2006, Johnson began performing with another hip hop artist known as Killah Priest, who was affiliated with the famous, nationally known rap group, the Wu-Tang Clan.  Compl. ¶¶22-23.  In 2012, Killah Priest invited Plaintiff to join the Killa Beez, a collective of hip hop performers, which "was created as the next generation of Wu-Tang Clan members, and consists of several sub-groups organized by region."  Compl. ¶¶ 22-27.  Plaintiff alleges that he joined a sub-group of the Killa Beez called the "Midwest Killa Beez" because he is originally from Johnstown, Pennsylvania. Compl. ¶ 27.

Plaintiff's career prospects and notoriety increased dramatically after he joined the Killa Beez and became affiliated with the Wu-Tang Clan:  music promoters sought to book him; he embarked on a national and international tour, playing large venues several times a month with Killah Priest and Wu-Tang Clan member, Cappadonna; he recorded songs with other artists; and he successfully recorded his own single.  Compl. ¶¶ 28-34.  All of this came to a halt, however, when Plaintiff was arrested in Pennsylvania in March 2014.  Compl. ¶ 37.  Plaintiff states that at the time of his incarceration, he was on the verge of establishing a national reputation "through his affiliation with the Wu-Tang Clan and the fan base he had been developing since 2006." Compl. ¶ 36.

---

[2] The facts set forth in this summary are based on the allegations in the Complaint.  When considering a motion to dismiss, a court must accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in favor of the non-movant.  However, it need not accept bare legal conclusions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-78 (2009); *Aoki*, 839 F. Supp. 2d at 763.

In April of 2014, another hip hop artist named Andre Johnson, who performed under the stage name "Christ Bearer," cut off his penis and jumped from a window in an apparent attempt at suicide. Compl. ¶ 39. Christ Bearer was a member of the West Coast Killa Beez, another group affiliated with the Wu-Tang Clan. Compl. ¶40. Thus both Plaintiff and Christ Bearer used the first name "Andre," shared the last name "Johnson," and were hip hop artists who performed with one of the "Killa Beez" groups affiliated with the Wu-Tang Clan. On April 16, 2014, Defendant TMZ mistakenly reported that Plaintiff (not Christ Bearer) was the individual who had attempted suicide in this manner, identifying him as "Andre Johnson aka Andre Roxx." Compl. ¶ 41.

Immediately after TMZ's report, several other media outlets, including BET.com, the New York Daily News, USA Today, The Urban Daily, newsone.com, 100.3 The Beat, the Atlanta Daily World, and the Chicago Defender, published stories on their websites about the same incident, erroneously repeating that Plaintiff had been involved. Compl. ¶¶ 46-65. Plaintiff claims to have learned of "the story" while in prison in Pennsylvania, though he does not specify which story. Compl. ¶ 74. Nearly two years after the publication of the articles listed above, Plaintiff sued in Delaware, alleging defamation against Viacom (without alleging any defamatory article), CBS Interactive (without alleging any defamatory article), BET Interactive, LLC (over the article in BET.com), Daily News, L.P. (article in New York Daily News), Gannett Company, Inc. (article in USA Today), iHeartMedia (article in 1003thebeat.iheart.com), Interactive One, LLC (articles in The Urban Daily and newsone.com), and Real Times Media, LLC (articles in Atlanta Daily World and Chicago Defender), among others.

4

## IV.   ARGUMENT

**A.   Plaintiff's Claims are Untimely**

Under the Delaware Borrowing Statute, 10 Del. C. § 8121, and Delaware choice of law

rules, Pennsylvania's one-year statute of limitations applies, barring all of Plaintiff's claims

against the Group Defendants. See *Dymond v. National Broadcasting Co.*, 559 F. Supp. 734, 735

(D. Del. 1983).  The Delaware borrowing statute was enacted to "shorten the period of limitation

applicable to actions arising in foreign jurisdictions if the foreign statute specifies a shorter

period." *Pack v. Beech Aircraft Corp.*, 132 A.2d 54, 57 (Del. 1957).  It provides that, when a

cause of action arises outside of the state, "an action cannot be brought in a court of this State to

enforce such cause of action after the expiration of whichever is shorter, the time limited by the

law of this State, or the time limited by the law of the state or country where the cause of action

arose, for bringing an action []" 10 Del. C. § 8121.  *See, e.g., Smith v. Del. State Univ.*, 47 A.3d

472, 480 (Del. 2012) (applying Delaware borrowing statute to find that New York law barred

plaintiff's defamation claim as untimely).  Under the borrowing statute, "Delaware courts will

apply the foreign state's statute of limitations whenever it would apply the foreign state's

substantive law." *Dymond*, 559 F. Supp. at 736; *see also Perlman v. Vox Media, Inc.*, No.

10046-VCP, 2015 WL 5724838, at *10-12 (Del. Ch. Sept. 30, 2015).

**1.   Under the Delaware Borrowing Statute, this Action "Arose" in the State of Plaintiff's Residence – Pennsylvania – and Pennsylvania Law Therefore Applies**

This case presents the precise type of situation in which the borrowing statute applies.

As an initial matter, the case "arose" in Pennsylvania.  Delaware courts treat allegedly

defamatory statements published on the internet - such as the one alleged by Plaintiff - as

"multistate" or "aggregate" communications. *Aoki*, 839 F. Supp. 2d at 765; *Dymond*, 559 F.

5

Supp. at 737.  A multistate defamation claim arising from an internet communication is governed by the law of the state which has "the most significant relationship" to the claim. *Perlman*, 2015 WL 5724838, at *10.  In order to determine which state has the most significant relationship to the claim, Delaware courts engage in choice of law analysis prescribed by the Restatement (Second) Conflict of Laws. *Aoki*, 839 F. Supp. 2d at 765 (citing Restatement § 150).

In the multistate defamation context, it is nearly always the case that "the local law of the state of the plaintiff's domicile applies, unless, with respect to the particular issue, one of the other states has a more significant relationship to the occurrence and the parties." *Perlman*, 2015 WL 5724838 at *11; *Dymond*, 559 F. Supp. at 737.  This presumption is based on the recognition that "defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence." *Aoki*, 839 F. Supp. 2d at 765.  Thus, "the most important consideration in choosing the applicable law is the residence of the party allegedly defamed." *Id.*

Here, the Complaint alleges that Plaintiff is currently a resident of Philadelphia. Compl. ¶ 1.  Plaintiff not only resides in Pennsylvania, but Pennsylvania is also the state with the most significant relationship to his claims.  Plaintiff alleges that he is originally from Johnstown, Pennsylvania. Compl. ¶ 27.  Further, plaintiff alleges that at the time the Articles were published, he suffered injury in Pennsylvania as a result of the allegedly defamatory statements. Compl. ¶¶ 74-75.

Conversely, Plaintiff has pled *no* facts that would establish a significant relationship between the underlying events and the state of Delaware.  The only ostensible connection between the claims and the state of Delaware is the fact that some (though not all) of the defendants are Delaware corporations, although all of these defendants are headquartered

elsewhere. The fact that some defendants are incorporated in Delaware may provide a basis for *jurisdiction* in Delaware, but it plays no role whatsoever in determining which state's substantive laws apply. *See e.g., Dymond,* 559 F. Supp. at 737 (finding Louisiana – plaintiff's state of residence – to be the state with the most significant relationship to claim filed in Delaware against a Delaware corporation); *Perlman,* 2015 WL 5724838, at \*12 (applying California law, on similar grounds).

Accordingly, Pennsylvania has the most significant relationship to the claims, and Pennsylvania law applies.

### 2. Plaintiff's Claims Are Barred Under Pennsylvania Law

Pennsylvania's shorter statute of limitations bars Plaintiff's claims. The allegedly defamatory articles were published in April and May of 2014 (Compl. ¶¶ 41, 65) and this suit was filed nearly two years later, in March 2016. In Pennsylvania, the statute of limitations for claims of defamation and false light is one year. 42 Pa. Consol. Stat. § 5523(1). In Delaware, the limitations period for the same claims is two years. 10 Del. C. § 8119. Therefore, the Delaware Borrowing Statute requires application of Pennsylvania law since it is the shorter statute of limitation, and Plaintiff's claims are untimely. *See Smith*, 47 A.3d at 480 (applying most significant relationship test and finding that New York law applies to bar Plaintiff's defamation claim as untimely); *Dymond,* 559 F. Supp. at 737 (dismissing Plaintiff's multistate defamation claim as untimely upon a finding that Louisiana law applied under 10 Del. C. § 8121); *Perlman,* 2015 WL 5724838, at \*12 (applying California law and dismissing certain defamation claims as untimely); *Grubbs v. Univ. of Del. Police Dept.*, No. 1:15-cv-00195-GMS, Dkt. 177, at \*4 (D. Del. Nov. 30, 2015) (applying Delaware borrowing statute to multistate defamation case, finding that action "arose" in Pennsylvania, the state of Plaintiff's residence, and dismissing the claims as time-barred under Pennsylvania's one year statute of limitations).

7

Accordingly, Plaintiff's claims against the Group Defendants should be dismissed with prejudice pursuant to the Pennsylvania statute of limitations.

**B.      Plaintiff has Failed to Establish that Venue is Proper in Delaware**

Plaintiff alleges that "Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because all Defendants are subject to personal jurisdiction within this district."[3] Compl. ¶ 18. Plaintiff presumably intended to refer to 28 U.S.C. § 1391(b), which specifies the three bases for venue under that statute. However, none of these bases exists here.

First, Section 1391(b)(1) provides that venue for a civil action is proper in "a judicial district in which any defendant resides" only if "*all* defendants are residents of the State in which the district is located" (emphasis added). Plaintiff cannot establish venue on this basis since several of the defendants do not reside in Delaware. *See* Compl. ¶¶ 3, 4, 6, 8 (alleging that several defendants were neither formed under Delaware law nor based in Delaware).

Second, under § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Plaintiff has not pled that any – let alone "a substantial part" – of the events giving rise to his defamation claim occurred in Delaware. By contrast, Plaintiff *has* pled facts which make clear that Pennsylvania, the state where he claims to have experienced harm while incarcerated and where he currently resides, is the judicial district in which events giving rise to this claim occurred. Compl. ¶¶ 74-75. Plaintiff alleged that he first learned of the story "while watching a local news program in the day room in prison" in Pennsylvania and, as a result, "was forced to go into protective custody (in isolation 23 hours a day) because other inmates began threatening, harassing and attacking him." *Id.* Plaintiff's own

---

[3] Plaintiff's citation to § 1391(a) is incorrect. Section 1391(a) concerns the applicability of the venue statute to civil actions, not the basis for establishing venue in a particular district court.

allegations therefore establish that venue would be proper in Pennsylvania – not Delaware – pursuant to § 1391(b)(2).

Third, §1391(b)(3) provides for venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction" if "there is no district in which an action may otherwise be brought as provided in this section." In other words, §1391(b)(3) "is a fall-back provision that applies only 'if there is *no other district which would have both personal jurisdiction and venue as to all defendants*.'" *In re First Solar, Inc. Derivative Litig.*, No. Civ. 12–417, 2013 WL 817132, at *11 (D. Del. Mar. 4, 2013) (emphasis added; citing *FS Photo, Inc. v. PictureVision, Inc.*, 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

As discussed above, venue would be appropriate in Pennsylvania. Furthermore, under the Pennsylvania long-arm statute, Pennsylvania courts may assert personal jurisdiction over any person who "[c]aus[es] harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa. Consol. Stat. § 5322(a)(4); *Vector Sec., Inc. v. Corum*, No. Civ. A. 03-741, 2003 WL 21293767, at *2 (E.D. Pa. Mar. 21, 2003); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). Since Plaintiff could have commenced his action in Pennsylvania under § 1391(b)(2), venue in Delaware is not available under Section 1391(b)(3). *See First Solar, Inc.*, 2013 WL 817132, at *11-12 (venue in Delaware was improper under § 1391(b)(3) because the case could have been brought under (b)(2) in Arizona; *Del. Prof'l Ins. Co. v. Hajjar*, 55 F. Supp. 3d 537, 543 (D. Del. 2014) (venue was not proper in Delaware when case could have been brought in New Jersey pursuant to § 1391(b)(2)).

Under 28 U.S.C. § 1406, when venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Transfer here would not be in the interests of justice, since the Pennsylvania statute of

9

limitations barred Plaintiff's claims at the time the action was filed and Plaintiff cannot, as a matter of law, plausibly plead actual malice (*see Section IV.C., infra*). Therefore, the court should dismiss with prejudice, rather than transfer, the claims against the Group Defendants. *See Bockman v. First American Marketing Corp.*, 459 Fed. Appx. 157, 160–162 (3d Cir. 2012) (finding that district court did not err in dismissing derivative suit against managers of Maryland corporation for improper venue in Pennsylvania, where acts forming the basis of the claims took place in Colorado); *McTyre v. Broward Gen. Med. Ctr.*, 749 F. Supp. 102 (D.N.J. 1990)("After it was determined that district court did not have personal jurisdiction in medical malpractice action arising from alleged negligent acts occurring in Florida, dismissing action, rather than transferring action to Florida, was appropriate, where action would have been barred under applicable Florida statute of limitations had it been brought there.").

### C.    Plaintiff Cannot Plausibly Plead Fault, As a Matter of Law

The allegations of the Complaint establish that Plaintiff cannot plead the requisite element of fault sufficiently as to any of the Group Defendants.  Plaintiff's own allegations establish that he is a public figure, meaning that he must plead that defendants published the statements with actual malice.  His failure to allege actual malice provides yet another basis for dismissal.

#### 1.    Plaintiff is a Public Figure

Plaintiff's allegations establish that he is a public figure.  In *Gertz v. Robert Welch, Inc.*, the Supreme Court explained that public figures are not only individuals who hold government office, but can also be those who are properly classified as public figures "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention." 418 U.S. 323, 342 (1974).  The same standard applies to false light claims brought by public figures. *Martin v. Widener Univ. Sch. of Law*, No. CIV. A. 91C-03-255, 1992 WL

153540, at *18 (Del. Super. June 4, 1992) (citing *Time, Inc. v. Hill*, 385 U.S. 374, 380-91

(1967)); *see also Taha v. Bucks Cty.*, No. CV 12-6867, 2015 WL 9489586, at *4 (E.D. Pa. Dec.

30, 2015). In Delaware, public figures include "[t]hose whose activities have periodically

brought them before the public, such as entertainers, [] because their activity regularly receives

media coverage and they are in a position to command public attention." *Re v. Gannett Co.*, 480

A.2d 662, 665 (Del. Super. 1984), *aff'd*, 496 A.2d 553 (Del. 1985); *see also Am. Future Sys.,*

*Inc. v. Better Bus. Bureau,* 592 Pa. 66, 88, 923 A.2d 389, 402 (Pa. 2007) ("public figures

effectively have assumed the risk of potentially unfair criticism by entering into the public arena

and engaging the public's attention"). Finally, it is not necessary that the Plaintiff be "nationally

known" to be deemed a public figure, only that Plaintiff has notoriety in the community or area

where the alleged defamation took place. *Q-Tone Broad. Co. v. v. MusicRadio of Maryland Inc.*,

No. CIV.A.93C-09-021-WTQ, 1995 WL 875438, at *5 (Del. Super. Dec. 22, 1995) (citing

*Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 n.22 (D.C. Cir. 1980); *see also*

*Mendelson v. Morning Call, Inc.*, 2007 Pa. Dist. & Cnty. Dec. LEXIS 256, at *6 (Pa. C.P. 2007)

(under Pennsylvania law, "[n]ationwide fame or notoriety is not required, but rather the question

is whether the individual had achieved the necessary degree of notoriety where he was

defamed"). The classification of a claimant as a public or private figure is a question of law to

be determined by the court. *Q-Tone Broad. Co.*, 1995 WL 875438, at *4; *Marcone v. Penthouse*

*Int'l Magazine For Men*, 754 F.2d 1072, 1081 (3d Cir. 1985).

  Plaintiff's own allegations make clear that he is a public figure. He is an entertainer who

has toured and performed nationally and internationally, and was affiliated with one of the

11

best-known hip hop groups of all time, Wu-Tang Clan.[4]  Compl. ¶¶ 30, 33-36.  He had his own

"fan base" and a website devoted to him and his music career.  Compl. ¶¶ 36, 70.  Plaintiff's

notoriety, his many appearances as a performer and his affiliation with Wu-Tang Clan plainly

make him a public figure in the hip hop music world.

### 2.    Plaintiff Has Failed to Plead Actual Malice

Public figures such as Plaintiff may recover for defamation "only on clear and convincing

proof that the defamatory falsehood was made with knowledge of its falsity or with reckless

disregard for the truth." *Martin*, 1992 WL 153540, at *10.  Plaintiff has not pled – and could not

plead – actual malice.  The Supreme Court has recognized that "[t]here is a significant difference

between proof of actual malice and mere proof of falsity." *Bose Corp. v. Consumers Union*, 466

U.S. 485, 511 (1984).  Errors or mistakes in reporting cannot constitute actual malice where, as

here, the only evidence relied on to demonstrate actual malice is the mistake itself. *See e.g.*,

*Marcone*, 754 F.2d at 1087 (reversing libel judgment for plaintiff who had been mistakenly

identified as a drug defendant, even though documents in reporter's possession, which were

apparently misread, showed that another man with a different name was actually the drug

defendant); *Bose Corp.* 466 U.S. at 513 (holding that district court erred in finding that an

inaccurate description of the operation of speakers was sufficient to demonstrate actual malice);

*Time, Inc. v. Pape*, 401 U.S. 279, 291 (1971) (finding that where a magazine confused mere

allegations of police abuse with actual, reported findings of the Civil Rights Commission, such

error, even if negligent, did not amount to actual malice).

---

[4] Wu-Tang Clan's Official Website indicates that it is the "Home of Wu-Tang Clan and Killa Beez," http://www.wutang-corp.com/index.php. Wu-Tang Clan has released seven gold and platinum albums, and was ranked by About.com as the greatest hip hop group of all time. https://en.wikipedia.org/wiki/Wu-Tang_Clan#cite_note-1; http://rap.about.com/od/toppicks/ss/Best-Rap-Groups.htm.

Such mistakes fall within the "breathing space" for journalists reporting on matters of public interest, where an "erroneous statement is inevitable." *New York Times v. Sullivan*, 376 U.S. 254, 271-72 (1964); *Bose Corp.*, 466 U.S. at 513. The Supreme Court has held that a plaintiff's burden of proving actual malice requires him to do so by "clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Marcone*, 754 F.2d at 1087 (citing *Gertz v. Robert Welch*, 418 U.S. 323, 342 (U.S. 1974)). "The standard of actual malice is a daunting one." *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996). Plaintiff must plead that the speaker knew the statements were false or "in fact entertained serious doubts as to the truth" when he made the defamatory statements. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Thus, a failure to investigate, standing on its own, does not establish or give rise to an inference of actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989); *Marcone*, 754 F.2d at 1089; *Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 647 N.E.2d 101, 104, 84 N.Y.2d 786, 492-93 (N.Y. 1995). Rather there must be some allegation that the defendant purposefully avoided further investigation with the intent to avoid the truth. *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 692; *Grier v. Johnson*, 232 A.D.2d 846, 849, 648 N.Y.S.2d 764, 768 (N.Y. App. Div. 1996).

Although a court must take the well-pleaded *factual* allegations as true for a Rule 12(b)(6) motion, legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Under *Twombly* and *Iqbal*, a plaintiff must provide "enough facts to state a claim to relief that is *plausible* on its face," rather than merely possible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *Iqbal*, 556 U.S. at 695-96. Where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

13

Under *Twombly* and *Iqbal*, a defamation suit may be dismissed for failure to state a claim where, as here, the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice. *See, e.g., Biro v. Conde Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015) (plaintiff failed to state a claim where no facts were pled to establish that defendants, including republishers, had serious doubts regarding the truth of the allegedly defamatory statements); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (basketball player who sued over false reports that he declared bankruptcy failed to allege specific facts showing defendants, including republishers, knew or were recklessly indifferent as to whether statement was false; *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (conclusory allegations that defendants were reckless without pleading specific facts regarding state of mind is insufficient under *Iqbal* and *Twombly*); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (candidate for office failed to plead actual malice against political organization that relied on news articles in publishing statements critical of him, where no facts suggested that defendants knew or had reason to know that any statements in the articles were false). *See also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703-704 (11th Cir. Fla. 2016) (musician failed to allege specific facts demonstrating actual malice against New York Post for statements published in gossip section of the paper).

Plaintiff has not pled any facts that give rise to a reasonable inference that any of the Group Defendants published the articles at issue with knowledge of their falsity, or with serious doubts as to whether or not the statements were true. Indeed, Plaintiff does not even allege that the Group Defendants knew the statements were false or seriously doubted that they were true. Plaintiff expressly alleges that the Group Defendants merely "republished false statements that were initially published by the Defendants TMZ" and does not allege that any of the Group

14

Defendants knew the TMZ report was inaccurate.  Compl. ¶100.  Plaintiff alleges that defendant

TMZ first broke the story concerning "Christ Bearer's" suicide attempt, misreporting that

Plaintiff was the victim and posting a picture of Plaintiff.  Compl. ¶¶ 41-43.  As Plaintiff pleads

it, "TMZ's original, inaccurate, story immediately spread across the internet and to television and

radio news."  Compl. ¶ 46.  In other words, the other defendants picked up TMZ's story in the

midst of the breaking news of this incident and inadvertently made the same mistake.  Compl.

¶¶ 47-65.  In many cases the publications expressly linked to or referenced the TMZ report.  *See*

Rosenfeld Aff., Ex. B, articles published on BET.com, New York Daily News, USA Today

(Gannett), and 100.3 The Beat (iHeartMedia).  That this mistake occurred is not surprising, as

Plaintiff and Christ Bearer both use the name "Andre" and the last name "Johnson" and both are

hip hop artists who perform with one of the "Killa Beez" groups affiliated with the WuTang

Clan, giving rise to confusion.  Compl. ¶¶ 28, 40.

     In this context, an inadvertent error in the wake of other erroneous news reports does not

rise to the level of actual malice.  *See e.g.*, *Biro,* 963 F. Supp. 2d at 278 (where no specific facts

were pled as to the state of mind of Defendant-republishers which showed they had "actual,

subjective doubts" as to accuracy of original magazine story, Plaintiff failed to sufficiently plead

actual malice); *Schatz,* 669 F.3d at 58 (Plaintiff could not plead actual malice against

Defendants, who quoted newspaper articles in flyers critical of Plaintiff, absent any facts

showing that Defendants doubted  the veracity of the articles).  Reliance on a reputable

publication – here TMZ, an oft-cited celebrity news site[5] – cannot constitute actual malice, as a

---

[5] *See, e.g.*, Jonathan Mahler, *TMZ Broke Ray Rice, Donald Sterling and Jameis Winston Stories in 10-Month Span,* N.Y. Times, Sep. 9, 2014, available
at: http://www.nytimes.com/2014/09/10/sports/football/tmz-broke-ray-rice-donald-sterling-and-jameis-winston-stories-in-10-month-span.html?_r=0 (crediting TMZ with breaking several major news stories); Taylor Wofford, *Baltimore Ravens, NFL Sack Ray Rice After Video is Released,*

matter of law, even if the original publication turns out to be mistaken.  *See e.g., Tucker v. Fischbein*, No. 97-6150, 1999 U.S. Dist. LEXIS 1781, at \*13-14 (E.D. Pa. Feb. 9, 1999) ("[G]ood faith reliance" on previously published materials "precludes a finding of actual malice as a matter of law") *aff'd, Tucker v. Fischbein*, 237 F.3d 275, 287 (3d Cir. Pa. 2001); *Liberty Lobby, Inc. v. Dow Jones*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) (same); *Biro*, 963 F. Supp. 2d at 279 (plaintiff could not plausibly plead actual malice where defendants republished an article from a reputable magazine).  Nor can actual malice at the time of publication be inferred solely from a publisher's failure to retract a statement once it learns that the statement is false.  *New York Times*, 376 U.S. at 286; *see also Pippen*, 734 F.3d at 614.[6]  Conversely, corrections do not demonstrate actual malice. S*immons Ford, Inc. v. Consumers Union of the United States, Inc.*, 516 F. Supp. 742, 747 (S.D.N.Y. 1981) (finding that publication of correction regarding federal safety standards was not evidence of actual malice); *Ripps v. Gannett Co.*, No. CV 91-B-1954-S, 1993 U.S. Dist. LEXIS 8552, at \*18 (N.D. Ala. Mar. 3, 1993) (published correction of inaccurate statements was not evidence of actual malice).

In sum, Plaintiff has failed to make any factual allegations supporting his conclusory allegation of actual malice, much less plausible allegations.  Indeed, the allegations themselves

---

Newsweek, Sep. 8, 2014, available at: http://www.newsweek.com/baltimore-ravens-nfl-sack-ray-rice-269088 (indicating that TMZ's release of footage led to suspension of football player Ray Rice); Eric Goldwein, *Johnny Manziel kicked out of Vegas club in his latest starring role on TMZ*, Washington Post, May 22, 2016, available at: https://www.washingtonpost.com/news/early-lead/wp/2016/05/22/johnny-manziel-kicked-out-of-vegas-club-in-his-latest-starring-role-on-tmz/ (linking to and quoting TMZ).
[6] Plaintiff's unsupported allegation that the Group Defendants published "negligently and with reckless disregard to whether the facts contained therein were true or false." (Compl. ¶100) does not cure this defect.  *See Biro*, 963 F. Supp. 2d at 280 (to determine whether plaintiff has sufficiently pled actual malice, the court "must strip away and discard the complaint's conclusory allegations," and "determine whether the remaining factual content permits the reasonable inference that the defendant is liable for the misconduct alleged.").

establish the lack of actual malice. This provides yet another basis on which the Complaint should be dismissed.

**D.      Plaintiff has Failed to Allege Any Actionable Statement by Viacom or CBS Interactive**

Plaintiff's claims against Viacom and CBS Interactive should be dismissed for an additional, and independent, reason: Plaintiff has not identified any allegedly defamatory utterance by either defendant.

To state a claim for defamation, a plaintiff must allege that the defendant made "a false and defamatory communication concerning the plaintiff." *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 715-16 (D. Del. 2008); *Turk v. Salisbury Behavioral Health, Inc.*, No. 09-CV-6181, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 27, 2010). A plaintiff who cannot allege or identify a specific defamatory statement has failed to state a claim for defamation. *Smiley v. Daimler Chrysler*, 538 F.Supp.2d at 716; *Turk,* 2010 WL 1718268, at *4. Here, Plaintiff has made no allegation of any false and defamatory statement made by Viacom or CBS Interactive. This glaring omission is fatal to Plaintiff's claims against both defendants Viacom and CBS Interactive.[7]

_____

[7] Although Plaintiff claims that he heard an allegedly defamatory story while in prison on a "local radio station affiliated with Defendant CBS," (Compl. ¶ 74) Plaintiff has not identified the station or indicated which specific statements in the purported CBS broadcast were defamatory. He does not allege that this unidentified station was owned by CBS Interactive, and even if it were, he has not alleged alter ego status or any other basis to impose liability on a parent corporation for its subsidiary's statement. *See e.g., Quinto v. A&P/New Dominion Stores*, No. 90-6490, 1991 U.S. Dist. LEXIS 14736, *4 (E.D. Pa. Oct. 11, 1991) (corporate parents are generally not held to be responsible for the torts of their wholly owned subsidiaries unless the subsidiary acted "merely as a shell or as a front" for the parent and the separateness of the entities was "disregarded."); *Stinson v. GAF Corp.*, 757 F. Supp. 644, 646 (W.D. Pa. 1990) (in order to hold parent corporation liable for the tortious actions of its subsidiary, a party must make a threshold showing "that the controlled corporation acted robot - or puppet-like in mechanical response to the controller's strings or pressure"); *Advocat v. Nexus Industries, Inc.*, 497 F. Supp. 328, 334 (D. Del. 1980) (observing that a parent company can only be held liable for the torts of its subsidiary where the subsidiary is a "mere instrumentality" of the parent, and

17

**E.**   **Delaware Lacks Personal Jurisdiction Over Defendant Real Times Media**

Plaintiff has made no factual allegations that establish the requisite nexus between Real Times Media LLC and the state of Delaware.  Compl. ¶ 51.  He simply alleges that the Atlanta Daily World and the Chicago Defender, owned by Real Times Media, published defamatory articles in which he was named, and not that the company was founded under Delaware law, is based in Delaware or targets any of its publications to a Delaware audience.  Merely publishing articles on the internet, without more, does not provide grounds for the exercise of personal jurisdiction under Delaware's long-arm statute. 10 Del. C. § 3104; *Brennerman v. Guardian News & Media Ltd.*, No 1:14-cv-00188-SLR-SRF, 2015 U.S. Dist. LEXIS 172429, *26 (D. Del. Dec. 29, 2015).  In *Brennerman*, the court held that exercising personal jurisdiction over a newspaper that posts content on the internet (in its home state) whenever "such content is reviewed on the internet by a person in Delaware" is an overly broad extension of specific jurisdiction that violates due process, which "cannot be the intention of the Delaware long-arm statute." *Id*; *see also Kabbaj v. Simpson*, 547 F. App'x 84, 88 (3d Cir. 2013) (holding that "[p]ersonal jurisdiction cannot lie solely on the basis that [] Internet postings may be accessed by individuals in Delaware," where Plaintiff has not shown that Defendant purposefully availed itself of conducting activity in Delaware by "targeting" posts to the state, or "interacting" with residents through such posts).  For the same reason, the Court lacks personal jurisdiction over Real Times in this action.

## V.   CONCLUSION

For the foregoing reasons, Group Defendants respectfully request that the Court dismiss all claims against them with prejudice pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6).

---

finding that Defendant company did not exercise sufficient control over its subsidiary to satisfy that test).

18

Dated:  July 11, 2016                          MORRIS JAMES LLP


OF COUNSEL:                                     Thomas E. Hanson, Jr. (#4102)
                                                500 Delaware Avenue, Suite 1500
James Rosenfeld                                 Wilmington, DE 19801-1494
Jaya Kasibhatla                                 (302) 888-6800
DAVIS WRIGHT TREMAINE LLP                       thanson@morrisjames.com
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104                        *Attorneys for Defendants*
(212) 489-8230                                  *BET Interactive, LLC, CBS Interactive, Inc.,*
                                                *Daily News, L.P., Gannett Company, Inc.,*
                                                *iHeartMedia, Inc., Interactive One, LLC,*
                                                *Real Times Media, LLC and Viacom*
                                                *International Inc.*

19