## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARQUES ANDRE JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 16-185-LPS |
| | : | |
| WARNER BROS. ENTERTAINMENT, | : | |
| INC., TMZ PRODUCTIONS, INC., EHM | : | |
| PRODUCTIONS, INC., TTT WEST | : | |
| COAST, INC., BARSTOOL SPORTS, | : | |
| INC., BET INTERACTIVE, LLC, REAL | : | |
| TIMES MEDIA, LLC, DAILY NEWS, | : | |
| L.P., CHERI MEDIA LLC, INTERACTIVE | : | |
| ONE, LLC, GANNET COMPANY, INC., | : | |
| CBS INTERACTIVE, INC., VIACOM | : | |
| INTERNATIONAL, INC., TOWNSQUARE | : | |
| MEDIA, INC., and IHEARTMEDIA, INC., | : | |
| | : | |
| Defendants. | : | |

Ronald Drescher, RONALD DRESCHER & ASSOCIATES, Wilmington, DE.
George Bochetto, Peter R. Bryant, BOCHETTO AND LENTZ, Philadelphia, PA.

    Attorneys for Plaintiff.

Kelly E. Farnan, Christine Dealy Haynes, Rudolf Koch, RICHARDS, LAYTON & FINGER, PA, Wilmington, DE.
Arwen Johnson, Linda M. Burrow, CALDWELL LESLIE & PROCTOR, PC, Los Angeles, CA.

    Attorneys for Defendants Warner Bros. Entertainment, Inc., TMZ Productions, Inc., TTT West Coast, Inc., and EHM Productions, Inc.

Arthur G. Connolly, III, CONNOLLY GALLAGHER LLP, Wilmington, DE.
Joel R. Weiner, KATTEN MUCHIN ROSENMAN LLP, Los Angeles, CA

    Attorneys for Defendant Barstool Sports, Inc.

Thomas E. Hanson, Jr., MORRIS JAMES LLP, Wilmington, DE.
James Rosenfeld, Jaya Kasibhatla, DAVIS WRIGHT TREMAINE LLP, New York, NY

    Attorneys for Defendant BET Interactive, LLC.

Thomas E. Hanson, Jr., MORRIS JAMES LLP, Wilmington, DE.

> Attorney for Defendants Real Times Media, LLC, Daily News, L.P., Interactive One, LLC, Gannet Company, Inc., CBS Interactive, Inc., Viacom International, Inc., and iHeartMedia, Inc.

Joseph Benedict Cicero, Stephanie S. Habelow, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE.

> Attorneys for Defendant Cheri Media LLC.

Stephen B. Brauerman, Sara E. Bussiere, BAYARD, P.A., Wilmington, DE.
David J. Margules, Elizabeth A. Sloan, BALLARD SPAHR LLP, Wilmington, DE.
Mark I. Bailen, James F. Romoser, BAKER & HOSTETLER LLP, Washington, DC.

> Attorneys for Defendant Townsquare Media, Inc.

---

## MEMORANDUM OPINION

February 14, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

On March 23, 2016, Plaintiff Marques Andre Johnson ("Plaintiff" or "Johnson"), a rap and hip-hop artist, filed a libel and false light invasion of privacy complaint against various media and news outlets ("Defendants"). (D.I. 1) ("Complaint")  Plaintiff asserts that Defendants published a story wrongly identifying Plaintiff as the rapper who attempted a gruesome self-mutilation suicide. (*Id.*)  After Defendants filed motions to dismiss the claims for, *inter alia,* failure to state a claim upon which relief can be granted, Plaintiff filed an Amended Complaint on August 25, 2016. (D.I. 21) ("Amended Complaint")  Defendants subsequently filed motions to dismiss the Amended Complaint on the same bases on which they had earlier moved to dismiss the original Complaint. (D.I. 27, 28, 30, 33)  The parties completed briefing on the motions to dismiss the Amended Complaint on November 11, 2016. (D.I. 35, 36, 37, 39, 40, 41, 42, 43)

Presently before the Court are motions to dismiss filed by: (1) Defendants BET Interactive, LLC; CBS Interactive, Inc.; Daily News, L.P.; Gannett Company, Inc.; Interactive One, LLC; Real Times Media, LLC; Viacom International, Inc.; and iHeartMedia, Inc. (D.I. 27); (2) Defendants Warner Bros. Entertainment, Inc.; TMZ Productions, Inc.; EHM Productions, Inc.; and TTT West Coast, Inc. (D.I. 28); (3) Defendant Townsquare Media, Inc. (D.I. 30); and (4) Defendant Cheri Media LLC (D.I. 33).  For the reasons set forth below, the Court will grant all four motions to dismiss for failure to state a claim on which relief may be granted based on the statute of limitations, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motions will

1

be denied as moot in all other respects.[1]

## I.    BACKGROUND[2]

Plaintiff Marques Andre Johnson is a rap and hip-hop artist who performs under the stage

name "Andre Roxx." (D.I. 21 at ¶ 2)  In 2012, the hip-hop group Wu-Tang Clan inducted

Plaintiff into their affiliate group, the Wu-Tang Killa Beez, boosting Plaintiff's music career,

including by allowing him to tour with other members of the Wu-Tang Clan throughout the

United States, Canada, and Mexico from 2012 through late 2013.  (*Id.* at ¶¶ 3-5, 61-62, 71)

Then, however, in March 2014, Plaintiff was arrested, convicted, and incarcerated, ultimately

serving 16 months in a Pennsylvania prison.  (*Id.* at ¶ 88)

Defendants are various corporations owning and operating entertainment news and media

sources including, among others, TMZ.com.  (*Id.* at ¶ 22)

In April 2014, while Plaintiff was incarcerated in Pennsylvania, a different rap artist

affiliated with Wu-Tang Clan – similarly named Andre Johnson, but performing under the stage

name "Christ Bearer" ("Christ Bearer") – attempted suicide at a party in California by severing

his penis and jumping out of a window.  (*Id.* at ¶¶ 101-02)  After Christ Bearer's failed suicide

attempt, Defendants, on April 16, 2014, reported the story on TMZ.com, wrongly attributing

Christ Bearer's actions to Plaintiff.  (*Id.* at ¶ 105)  After this initial publication, the story "spread

like wild fire across the internet and on television and radio news."  (*Id.* at ¶ 111)  Plaintiff

---

[1]The motions to dismiss the original Complaint (D.I. 12, 16, 18, 19) will be denied as
moot, in light of Plaintiff's filing of his Amended Complaint.

[2]This recitation of the facts takes as true the well-pleaded factual allegations of the
Amended Complaint, as the Court must do in deciding a motion to dismiss based on Rule
12(b)(6).

learned of the news on TV and on a CBS radio broadcast the day it was published – April 16, 2014 – while he was in prison in Pennsylvania. (*Id.* at ¶¶ 129-30) "As a result of Defendants' reckless, egregious, and defamatory statements, [Plaintiff] was forced to go into protective custody because other inmates began threatening, harassing and attacking him." (*Id.* at ¶ 131)

Since the April 16, 2014 news reports, Plaintiff has been publicly disavowed by the Wu-Tang Clan, unable to book concerts anywhere in the country, and unable to earn a living. (*Id.* at ¶¶ 136, 146, 153, 156) Furthermore, Plaintiff has been criticized and humiliated on social media, repeatedly approached and harassed by strangers in public, and rejected by friends and romantic partners, who no longer want to be associated with him for fear of harassment in public. (*Id.* at ¶¶ 157-62)

Plaintiff was released from prison in July 2015 and now lives in Philadelphia. (*See id.* at ¶ 21) Nine months after his release, on March 23, 2016, he filed his original Complaint. (D.I. 1) In it he asserted counts for libel and false light invasion of privacy, alleging that the mass-media, erroneous reporting caused him irreparable harm and destroyed his music career. (*Id.* at ¶¶ 95-103) After Defendants moved to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6) on July 11 (D.I. 12, 16, 18, 19), Plaintiff filed his Amended Complaint on August 25, 2016 (D.I. 21). Defendants moved to dismiss the Amended Complaint on September 23, 2016. (D.I. 27, 28, 30, 33)

## II.  LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

3

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a morion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

A party may raise a statute of limitations defense via a motion to dismiss under Rule 12(b)(6) when "the time alleged in the statement of a claim shows that the cause of action has not

been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir.

2002). When the time bar is apparent on the face of a complaint, the Court should grant such a

motion to dismiss. *See id.*

## III.   DISCUSSION

### A.   **Pennsylvania's Statute of Limitations Applies**

Plaintiff's amended complaint asserts two claims: libel and false light invasion of

privacy.[3] The parties dispute which state's law applies to Plaintiff's claims. Plaintiff contends

Delaware's two-year statute of limitations for defamation applies (*see* 10 Del. C. § 8119), while

Defendants counter that Pennsylvania's one-year statute of limitations controls (*see* 42 Pa. Cons.

Stat. § 5223(1)).

When federal jurisdiction is based upon diversity of citizenship, the Court must apply the

forum state's choice of law rules. *See Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir.

2009). As this Court sits in Delaware, it must apply Delaware's choice of law rules. Those rules

include Delaware's borrowing statute, which provides that when a non-Delaware resident files

suit in Delaware based on a cause of action arising outside of Delaware, the Court must apply the

shorter of Delaware's and the other state's statute of limitations. *See Dymond v. National

Broadcasting Co.*, 559 F. Supp 734, 735 (D. Del. 1983). Specifically, the Delaware borrowing

statute provides, in pertinent part:

> Where a cause of action arises outside of this state, an action
> cannot be brought in a court of this State to enforce such a cause of
> action after the expiration of whichever is shorter, the time limited
> by the law of this State, or the time limited by the law of the state

---

[3]For simplicity, the Court will sometimes refer to these two claims together as
"defamation" claims, as the statute of limitations analysis is identical for both claims.

> or country where the cause of action arose, for bringing an action
> upon such cause of action.

10 Del. C. § 8121.

To determine where a cause of action arises for purposes of the borrowing statute,

Delaware's choice of law rules ask which state has the most significant relationship to the claims

and to the parties. *See Dymond*, 559 F. Supp. at 737; *see also CAE Inc. v. Gulfstream Aerospace*

*Corp.*, 2016 WL 4497057, at *7 (D. Del. Aug. 26, 2016). While many factors can be included in

this analysis, in a defamation case there is a presumption that "the local law of the state of the

plaintiff's domicile applies unless, with respect to the particular issue, one of the other states has

a more significant relationship to the occurrence and the parties." *Stephen G. Perlman, Rearden*

*LLC v. Vox Media, Inc.*, 2015 WL 5724838, at *11 (Del. Ch. Sept. 30, 2015) (internal quotation

marks omitted); *see also Aoki v. Benihana, Inc.,* 839 F. Supp.2d 759, 765 (D. Del. 2012) (finding

most important consideration for choice of law analysis in widespread internet defamation cases

is residence of party allegedly defamed). This presumption is based on the fact that defamation

produces "a special kind of injury that has its principal effect among one's friends,

acquaintances, neighbors and business associates in the place of one's residence." *Aoki,* 839 F.

Supp.2d at 765.

Here, Plaintiff contends his causes of action arose in Delaware so Delaware's borrowing

statute does not apply. (D.I. 39-4 at 1, 5) Plaintiff bases his argument on the fact that, prior to

his incarceration: (1) he was contacted by a promoter in Delaware; (2) he was scheduled to play a

concert in Delaware; (3) two disc jockeys were promoting Plaintiff at house parties and clubs in

Delaware; (4) he was routinely a guest on local hip-hop radio programs broadcasted from

6

Delaware and into Delaware; and (5) he had a substantial Delaware fan-base. (D.I. 39-4 at 7)
Plaintiff further argues that because a majority of the Defendants are incorporated in Delaware,
and operate in Delaware, the defamatory statements must have occurred in and emanated from
Delaware. (*Id.* at 7-8)

Defendants respond that Plaintiff's causes of action instead arose in Pennsylvania, which
is undisputedly Plaintiff's domicile, and was his domicile at the time the defamatory statements
were made. (D.I. 31 at 5)  Defendants contend that Plaintiff has failed to rebut the presumption
that Pennsylvania has the most significant relationship to Plaintiff's cause of action. (*See id.* at
7-9)  The Court agrees with Defendants.

Because this is a multistate defamation case and Plaintiff resides in Pennsylvania, a
presumption exists that Pennsylvania law should apply – unless there is another state with a more
significant relationship to the occurrence or parties. *See Perlman*, 2015 WL 5724838, at *11;
*Aoki*, 839 F. Supp.2d at 765.  Plaintiff has failed to overcome this presumption.

In particular, Plaintiff has failed to show that Delaware has a more significant relationship
than does Pennsylvania with either the occurrence underlying his claims or with the parties.
Plaintiff fails to plead any unique injury in Delaware.  Prior to the defamatory statements,
Plaintiff toured "throughout the country," performed concerts in 17 different states, and "built a
following in diverse parts of the country, including the Northeast and Western United States."
(D.I. 21 at ¶¶ 42, 77)  He built a "substantial fan base . . . in the Western United States and the
East Coast." (*Id.* at ¶ 87)  Now, however, due to the defamatory statements, he is "unable to
book any concerts ***anywhere*** in the country, including in Delaware" and "unable to generate ***any***
interest or book ***any*** concert events." (D.I. 21 at ¶¶ 134, 146) (emphasis added)  It follows that

7

Plaintiff has (allegedly) been substantially injured across the United States, including particularly the Northeast, East Coast, Western United States, and Delaware.  While all of this shows that Delaware is among the places where Plaintiff was injured, it does not show that his injury in Delaware was different – in kind, or in magnitude – than the injury he suffered in other parts of the country.  There is nothing unique, or in any way "more significant," about the injury he suffered in Delaware than the injury he suffered in Pennsylvania.  Plaintiff points to his special connections to Delaware – having a promoter, radio show, and concerts here – but they do not give Delaware a more significant relationship to his claims than the other states where he has lost fans and concert bookings.

To the contrary, the presumption that Plaintiff is most injured in Pennsylvania is confirmed here by the allegations of the Amended Complaint.  When the false news report came out in April 2014, Plaintiff was threatened, harassed, and attacked by other inmates at the Pennsylvania prison where he was being held, requiring him to go into protective custody in that same prison.  (*See* D.I. 21 at ¶ 131)  These are injuries he suffered solely in Pennsylvania.  Since he has been released from prison, Plaintiff has lived in Philadelphia, and he has continued to be injured, including by being "repeatedly approached and harassed by strangers in public," being "forced to disguise himself . . . before going into public," and having "his friends and romantic partners no longer want[ing] to be associated with him for fear of harassment in public."  (*Id.* at ¶¶ 157-60)  These injuries are suffered most significantly in the place where Plaintiff lives and spends most of his time: Pennsylvania.

Plaintiff suggests that because a majority of Defendants are incorporated in Delaware, this state has the most significant connection with his cause of action.  (D.I. 39-4 at 7-8)  This is

8

insufficient to overcome the presumption that Pennsylvania law applies. As this is the sole

unique connection between the cause of action and Delaware, acceding to Plaintiff's position

would place undue weight in the choice of law analysis on Defendants' state of incorporation –

which would undermine the purpose for the borrowing statute and improperly allow Plaintiff to

"shop" for the most favorable forum. *See Pack v. Beech Aircraft Corp.*, 132 A.2d 54, 58 (1957);

*see also id.* at 57 ("If a non-resident chooses to bring a foreign cause of action into Delaware for

enforcement, he must bring the foreign statute of limitations along with him if the foreign statute

prescribes a shorter time than the domestic statute.").

The Court concludes, therefore, that the state which has the most significant relationship

with Plaintiff's cause of action is his domicile, Pennsylvania. Under Pennsylvania law, the

statute of limitations for libel and false light invasion of privacy is one year from the date of

publication. *See In re Phila. Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012); *see also* 42

Pa. Cons. Stat § 5523(1). Here, the date of publication was April 16, 2014, and Plaintiff did not

file his Complaint until March 23, 2016, well beyond one year later. Thus, it is plain from the

Amended Complaint that Plaintiff's claims are time-barred, unless an exception to the statute of

limitations applies.

**B.      The Discovery Rule Is Not Applicable**

Plaintiff argues that even if Pennsylvania law applies, the Pennsylvania discovery rule

tolls the statute of limitations until Plaintiff had notice of the harm committed against him. (D.I.

39-4 at 9-10) Defendants respond that the discovery rule is inapplicable to mass-media

defamation claims where the injury is easily discernable. (D.I. 40 at 7) The Court again agrees

with Defendants.

9

Pennsylvania's discovery rule embodies a tolling principle that "accounts for a plaintiff's inability . . . despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Wolk v. Olson*, 730 F. Supp.2d 376, 377 (E.D. Pa 2010) (internal quotation marks omitted). The discovery rule is intended for "hard-to-discern injuries" and "would be at odds with a cause of action based upon a defamatory statement disseminated through a mass medium, like a website, and received by tens of thousands of readers." *Id.* at 378; *see also Cole v. Ferranti*, 532 Fed. Appx. 205, 206 (3d. Cir. 2013) (stating that discovery rule is reserved for cases where injured party is reasonably unaware that it has sustained injury); *see also Brown v. DaVita Inc.*, 2011 WL 5523823, at *4 (E.D. Pa. Nov. 14, 2011) (finding, in defamation context, discovery rule applies "when the alleged defamatory statements were uttered in a context in which the plaintiff could not have known about them," but not where "the plaintiff was present when the statement was uttered, knew that the statement had been published, or could have learned of the statement's publication with due diligence").

Here, Plaintiff alleges an injury that was not hard to discern. Instead, Plaintiff was almost immediately aware of the defamatory statements, which "spread like wild fire across the internet and on television and radio news." (D.I. 21 at ¶ 111) In addition to Plaintiff having personally heard the statements on local news and on a radio station, Plaintiff was forced into protective custody as a result of being harassed and attacked by other inmates who also heard the statements. (*Id.* at ¶¶ 129-31)[4] Plaintiff knew of both the existence and cause of his injury as of April 16, 2014. Thus, the discovery rule does not apply and does not toll the one-year statute of

---

[4]The parties agree that Plaintiff's incarceration does not toll the statute of limitations. (D.I. 40 at 9-10; D.I. 41 at 5 n. 4; D.I. 39-4 at 15 n.8)

limitations.

Even if this were not a mass-media defamation case, the discovery rule would still not toll

the statute of limitations, because Plaintiff was aware of the defamatory statements on April 16,

2014, as he heard them on radio and TV and was then placed in protective custody. (*Id.* at ¶¶

129-31)  Plaintiff's contentions that he did not know the extent of his injury, and could not reach

an attorney – and, hence, the statutory period should be tolled until July 2015, when Plaintiff was

released from prison (*see* D.I. 39-4 at 14 n. 5, 15; D.I. 21 at ¶¶ 131-32) – are unavailing.  The

discovery rule only tolls the limitations period if a plaintiff can demonstrate that he had no reason

to investigate, or that – despite conducting an investigation – he failed to discover the injury.  *See*

*Knopick v. Connelly*, 639 F.3d 600, 612 (3d Cir. 2011).  "A plaintiff's ignorance regarding the

full extent of his injury is irrelevant to the discovery rule's application." *Stephens v. Clash*, 796

F.3d 281, 288 (3d Cir. 2015).

Finally, because Pennsylvania has adopted the "single publication rule," it is the original

publication that triggers a cause of action. *In re Phila. Newspapers*, 690 F.3d at 174.  It is,

therefore, irrelevant that (1) other sources continued to publish the defamatory statements beyond

April 16, 2014 and (2) Plaintiff was unaware of the defamatory statements made by every

Defendant.

Hence, again, the discovery rule does not apply, the statute of limitations was not tolled,

and Plaintiff's complaint is time-barred.[5]

---

[5]Because the Court will grant Defendants' motions pursuant to Rule 12(b)(6), it is not
necessary for the Court to reach Defendants' separate grounds for dismissal under Rule 12(b)(2)
or (b)(3).

11

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's claims based on Federal Rule of Civil Procedure 12(b)(6) will be granted.  An appropriate Order follows.[6]

---

[6]Plaintiff does not ask for leave to amend.  If he did, it would be denied, as the Court agrees with the Warner Defendants: "because Plaintiff has already attempted to amend his complaint to avoid dismissal, and because no amendment could undo Plaintiff's failure timely to pursue his claims, any further amendment would be futile, and Plaintiff's Amended Complaint should be dismissed with prejudice." (D.I. 40 at 2) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988))